Good morning. Please, the court, I'd like to reserve three minutes, if I might, for rebuttal. And identify yourself for the record. Thank you. For a very simple case where everyone agrees what happened, this is a little bit complex legally. I was thinking about this on the airplane yesterday. And I hope that I have figured out an analysis that makes my thoughts a little clearer. There was an elephant in the courtroom at sentencing that no one recognized. And that elephant was a tempt. The indictment in this case, in count one, charged an attempt. Count two through five was the wire fraud. The last count was a mail fraud. Appellant pled to a wire fraud. None of the wire fraud counts involved transactions above the shipment of four sputtering targets for $800,000. The only allegation that got this above $800,000 was the allegation in count one, which was the attempt to get 12 sputtering targets that had the value of $2.3 million. When this was analyzed in the district court, the district court mistook the concept of attempt for the concept of intended loss. None of the parties discussed the difference between an attempted loss and an intended loss. Clearly, when you only look at the count of conviction, which was four sputtering targets were to be shipped when, in fact, none were. But that completely reads out relevant conduct from the sentencing guidelines. No, it doesn't. What it reads out is it allows relevant conduct to come in, but relevant conduct to get the 12, not the intent to get the 12. But you agree that our case law is very clear that we look at the grader of what the defendant was attempting to do, what the goal, if you will, was of the scheme to defraud. And you can see, do you not, that by pleading guilty to the wire fraud, that was a completed act? There's no question but what there was a completed act for four, which was $800,000, whether or not that ever happened. The question becomes, do we look at the value of the 12, which the record suggests was the ultimate object of the fraudulent scheme? And I think that you can look at the 12. I'm not quarreling that you can't look at the 12, but you then have to look at the 12 in light of the guidelines that deal with attempt. And in the excerpt of record, we look at note 17. Counsel, that's where you're losing me. I'm with you right up to the point that you concede that the crime was complete, so that he pled to a wire fraud that had been completed. And that, by everyone's agreement, involves four sputtering disks. That's correct. Okay. Then my question, this is where you're losing me, is why is it error for the district court to then consider as relevant conduct and rely upon those Ninth Circuit cases, which are pretty clear, that we look to the entire object of the fraudulent scheme in order to drive the guideline calculation for the enhancements to the base offense? There's nothing improper with the judge looking to that. But the judge has to keep in mind that what he's looking at is not a completed wire transfer. He's looking at conduct that was an attempt, that is alleged in count one, not as the wire transfer, but as an attempt. And when he evaluates that relevant conduct, he gets to note 17 that talks about a partially completed offense. I think you would have a much stronger argument if he had pled guilty to count one. But the he didn't count. I agree with you that this would be a cleaner case for everyone if he had pled guilty to count one. It would be a cleaner case for the prosecution had he pled guilty to a wire charge that alleged 12 sputtering targets worth $2.3 million. If by pleading guilty to $800,000, he was really pleading guilty to $2.3 million, he had an illusory contract in his plea. I guess the problem I'm having with the argument is I don't see this as being any different from a drug case where the guy gets caught with a smaller quantity than what he negotiated for and we tag him with the larger amount that he was trying to get, even though he only was found in possession of a portion of it. Well, one of the problems is in those cases you look on contract negotiations to arrive at what the defendant was trying to do. Just look at what it was that he was trying to get, and then the fact that he pled guilty to transporting, let's say, a kilo of cocaine, when in fact he was negotiating for five, it's sentenced as if he was involved in a scheme to get five kilos, even though we only caught him with one. Well, the defendant in this case started out big and worked his way down. The only reason he worked his way down was that the victim was smart enough to say, I'm not going to front you 12 sputtering discs worth $2.3 million on your good credit, which is zero. And using the court's analogy, usually when you go into an agreement where a defendant is negotiating with an undercover officer and he says, I would like to buy 100 kilos of cocaine, and then it gets down to where he says, you know, we talk about what the price is and what everything is, and he goes, oh, my goodness, I can only do 50 kilos of cocaine, and then they negotiate the 50 kilos, and he shows up with money for 10, he gets charged with the 50, not the 100 that everyone was dreaming about. How do you distinguish this from Koenig? I'm sorry? How do you distinguish this from Koenig? That's the ATM scam. Well, I think that the Koenig case is different because my recollection of the Koenig case is they in fact talk about this intent and they don't consider those notes at that time. My recollection, if I'm talking about the right case, they hadn't made the cards yet. They were going to make the cards and use them, but they didn't end up making the cards. That's correct. But there, they had everything done and everything was agreed to get to that point in time, and the government came in and stopped it. Here, the parties had negotiated their agreement, the parties had gone beyond the 12, the parties had worked their way down to, we're going to do, they worked down from 12 to 3 up to 4, and they then agreed what they were going to do was to do 4. In essence, I view this as being a contractual situation that you look at. The contract that was ultimately agreed upon by the parties was the 4. No matter where they started before, under the, once you get to the 4, that's what the attempt was. Suppose that the defendant said, I want you to front me 12, and the company came back and said, well, gee, we'd like to front you 20. Is the defendant then liable for the 20, although he only said front me 12? He might be, if he anticipated receiving all 20. I mean, I just don't see it. He may have attempted the 20 when that language was thrown, but his intent was the 12 that he was talking about and trying to get, and no one came there. Mr. Newton, maybe I'm just hung up on my analogy here. I just don't see the distinction between sputtering discs and kilos of narcotics. If the agreement was, I will sell you 5 kilos of narcotics, but I'm only going to front you 1 kilo at a time, and we catch you with the 1 kilo, then we're going to tag you for all 5. But the problem there was the defendant, when he negotiated for the 1 kilo, he was going to go ahead dealing with the undercover officer and keep coming back because he was going to take the kilo and sell it, get money, and buy the next kilo. And how's that different from not being able to... Because this defendant had no money, this defendant was not coming back for any more. Everyone agrees this defendant, this was a scam from the start, not a moving scam to steal the last 4 sputtering targets. This was a scam to steal the first 4. We've had any number of drug cases where you just substitute kilos for sputtering discs and the facts would be identical. But in those cases, the defendant thought that he was going to end up getting all of those kilos because he didn't know who he was dealing with, and here the defendant knew he was only getting 4, and that's all he was ever going to try to steal. That was his intent. Well, I'm not sure I can reach that conclusion. He initially attempted to steal more, but he didn't intend. Absent this kind of distinction, there is no legal difference between intent and attempt, and you're writing out all of those guideline provisions. There must be a reason why attempt is in the guidelines, and to hold otherwise writes them out and that's contrary to rules of statutory interpretation. Your time has expired. Do you have any questions? Okay. Thank you, counsel. Good morning, may it please the court. My name is Shashi Kavaramani on behalf of the United States. Based on the record before the district court, this court should affirm the district court's finding that the loss that the defendant's scheme sought to inflict upon the victim was for the 12 sputtering targets worth approximately $2.3 million. Assuming that's true, why isn't this a partially completed offense? Well, as noted by Judge Tallman and the answer given by defendant's counsel, the scheme was completed. Everything that had to be done in order to get it under the wire fraud context was done. Emails were sent, faxes were sent, a fake purchase order was sent requesting the $2.3 million worth of sputtering targets. It was only as a result of the victim's vigilance that the defendant didn't receive all 12 sputtering targets. Well, the note 17 seems to contemplate that if you have, you can have two frauds. You can have one that's a larger fraud and then a smaller fraud and then if the facts support that you have a smaller fraud, then you take, you apply the reduction. So looking at the facts here, he was only, only pled to the four as far as I can tell. Now, you may disagree with me, but let me, let me play this out. If that's true, then isn't that part of, he's, he's, they had an initial negotiation for the 12 and then they finally agreed on the four. Why isn't it two frauds and it's a partially completed offense as opposed to a completed offense that called for the delivery of all of the sputtering disks? First, if I may answer, one thing that was stated was that the indictment or the superseding indictment in this case had a count one attempted conspiracy and then counts two through six which set out a fraud scheme and count three referred and incorporated the fraud scheme and within that fraud scheme, it provided that after the price and transaction details were negotiated by email and faxes, 12 platinum sputtering targets were fraudulently ordered by email valued at approximately $2.3 million on behalf of Applied which was one of the victim companies. So that when the defendant pled guilty to count three, count three in turn incorporated the entire fraud scheme as well as the actions taken in furtherance of that fraud scheme. Therefore he did admit that the fraud scheme involved this $2.3 million. Now back to Judge Thomas' question as to why should it not be separate fraud schemes. It was always one fraud scheme. This isn't a situation where it was segregated, a situation in blitz that this court decided previously whereas a telemarketer scheme, the telemarketers were using a particular script calling up various victims and that is akin to more of a segregated, it's an entire fraud scheme with separate victims. Here, the fraud scheme was always to get 12 sputtering targets. The victim came back and said, we can only give you three. The counter was, we'll give us four because we need them immediately. But it was always those four or three, whatever they were, they were in increments. The increments were to total 12. And that was also recognized in the PSR that was provided to the district court. In the PSR provided to the district court, the probation officer stated that 10 days later, which would be July 18th, 2004, a letter was sent purporting to be from the same executive and bearing the applied logo to Johnson Mathew Incorporation, which was the victim, which included a purchase order, trade reference sheet, and a letter of authorization concerning the platinum sputtering targets. The scheme sought to order 12 sputtering targets from Johnson Mathew whose value was over $2,334,160.80 which was to be divided into three shipments. So even though they were to be sent out in increments, the total was always for 12. There's nothing in the record to indicate that the defendant ever or the schemers ever gave up on the hope of getting 12. But if it was 12, I mean, this was the thing that seemed inconsistent. If the scheme was for 12 and he only got four, then he didn't complete the offense. And then instead of saying, okay, so then he's entitled to the reduction, he jumped to, but it was complete when he sent out the email for the four. And it seems like there's an inconsistency there. It was complete when he sent the emails and the faxes ordering the 12, such that But I thought it was only ordering the four, which is what is the completed offense. That's what he pled to. He pled to the fraud scheme. And the fraud scheme incorporated the language that they ordered 12 platinum sputtering Now that they were to receive four at a time does not take it into the realm of an attempt. Because as this court has noted, fraud schemes are unique in that sense. It's not necessarily an attempt. It's partially a completed offense. That's the difference. An attempt would be perhaps a different issue. I'm sorry, Your Honor. Yes. Then it's not a partially completed offense because all the steps that had to be taken were taken. If the victim had said, fine, we'll send you 12, we wouldn't be here. I mean, that would be a simple thing. It was only as a result of the vigilance of the victim that the shipments were then going to be sent out in increments. Well, am I right that after the order was placed for 12, and your position, as I understand it, is that the email transmission of the purchase order and letter of authorization requesting 12 was the completed crime of wire fraud, right? Yes. At that point, because all it requires is the development of a scheme or artifice to defraud and then a mailing or a wire transmission in furtherance of the scheme. So at that point, the crime of wire fraud is complete. And the proof was that the object of that scheme was to order 12 disks. Correct? Yes, that's correct. And the victim's first response was, we'll sell you 12, but we're not going to give you all 12 at once on credit. We'll ship you three. And then the evidence showed the defendant came back and said, no, no, no, no, I want you to do four in the first shipment. And that's how it came to be that he was arrested receiving the first shipment of four. Correct. Okay. And there's nothing in the record that the defendants or the schemers ever gave up hope on 12. So when would the partially completed offense provisions ever become effective under this theory? Because basically you're saying, once you agree to 12 or there was a hope for 12, even though you never could get to 12, that the offense was complete as to everything, period. I just don't see under your theory how this sentencing guideline provision would ever work out. Can you give me an example of where you think it might play out? Well, fraud schemes are unique in that sense, versus it's more applicable in the context of a robbery where certain robberies are planned. And there is a plan to commit four robberies. It's stopped after the first one. It's only a partially completed offense as to the entire scope of the robberies that were sought. But in the fraud scheme, in that context, if the necessary groundwork had been laid, then in all that they were waiting to do, the co-schemers were waiting to get their booty, for lack of a better word, then no, the attempt or, I'm sorry, the partially completed offense application doesn't apply. Well, wouldn't the conspiracy be complete at the time that they had agreed to make four robberies, too? Wouldn't that be a completed offense? With the intended loss of all four banks? It would have been, however, under 2X1.1, which is the applicable guideline range. It recognizes a three-level decrease for conspiracies. So either way, it recognizes a partially completed offense is giving credit in that context. So because of the nature of the fraud scheme, it is slightly different in that regard. So you're basically saying in any fraud scheme, once, well, can you give an example in the context of fraud where the partially completed offense provisions would apply? Perhaps in the context of where a script is made out for telemarketers to call various individuals and they have a list of 100 victims that they want to call. The script is applying to 100 victims. They thought that they were going to get $5,000 from each. In that regard, there may be the possibility where the partially completed offense would only be to the extent that they made the phone calls and then were stopped. That may be a situation because the fraud has to be committed every time. Here, the fraud was fully committed as to that victim. And so there is a distinction between multiple victims and a single victim against who the fraud scheme was completed. Based on the record before it, the district court did not commit clear error in finding that the fraud scheme was completed and that the defendant's intended loss was for the entirety of the amount. And reading the intended loss definition from the guidelines, it means the pecuniary harm that was intended to result from the offense and includes pecuniary harm that would have been impossible or unlikely to occur. So impossibility or the unlikelihood of success is taken out of the equation for the district court when the district court calculated the guidelines. And based on that, we would ask that the court affirm the district court's finding in the guideline offense calculations. I see I have 16 or 15 seconds. If the court has any further questions, I'd be more than happy to answer them. Thank you, counsel. I quickly looked at the indictment and the only incorporation by reference that I saw in the indictment is paragraph 5, which is on page 2, where it says the allegations in paragraph 1 through 4 are realleged and incorporated. Herein is set forth in full. That does not refer to the entire scheme. When you get to paragraph 10, which is the use of the wires, there is no incorporation of the other paragraphs that talk about the $2.3 million. With regard to the attempt, it's clear here that the intent was the 4 because no sputtering targets were shipped. The defendant got the actual loss in this case, everyone agrees, is zero because nothing was shipped. The intended loss in this case is the 4, which is $800,000, because the defendant thought he was going to get that, although he did not. The attempt... I'm not sure I'm following you, though. If the count to which he pled indicated that he was trying to get 12... It did not. He didn't order 12? The count that he pled did not indicate that he attempted to get 12. Did he send a purchase order asking for 12 sputtering? That was in the count he didn't plead to. That was the attempt count, which was alleged as an attempt. All of the mail fraud counts, in none of those counts is there an allegation that incorporates conduct that includes 12 sputtering targets. All of the mail fraud counts talk about conduct that only relate to the 4 sputtering targets. The indictment is drafted in an unusual way, and that's what causes the problem. But didn't the, I guess for purposes of sentencing, didn't the district court have before it the initial contact with the victim was to order 12? Yes. The district court had that initial suggestion or attempt in front of it. It's our position that the district court applied the wrong law to that, and because they... It's not a dispute as a matter of fact that there was an initial request for 12. I do not, I think that all parties would agree that out in the scope of space there was a request for 12. It could have been a request for 2,000. Do you also agree that the crime of wire fraud is complete when there is a communication in furtherance of the scheme to defraud? I agree that that's true, but no one alleged that it was, that that communication was alleged by means of the wire fraud. In other words, for all we know, the communication was face-to-face on this record for that particular communication. Well, he pled guilty to wire fraud for wire fraud that dealt specifically with four sputtering targets. Now, just before you sit down, I want to make sure I have the analysis correct from your point of view. There seems to be two issues you're raising. One is what's the intended loss, right? That's the first issue. Now, if we assume that the intended loss was for all of them, does that defeat your partially completed offense? No. If we conclude the intended loss was for the entire shipment and that it's a partially completed offense, then the answer is you take it down three offense levels, right? Correct. So there are two issues. Correct. But if you take it down, you're getting to a level lower than the defendant agreed to. You're getting down to a level 13 and the defendant had agreed to a level 14. Yes. Thank you. Thank you both for your arguments. The case will be submitted and we'll proceed to the last case on today's oral argument calendar, which is United States v. Cohen, shift and noon.
judges: Thomas, Tallman, Ikuta